Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW
136 W12300 S, Ste B
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com

Troy K. Walker, Bar No. 7663
TROY K. WALKER, P.C.
 136 W12300 S, Ste B
Draper, UT 84020
(801) 553-1700
Attorneys for Plaintiffs and Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| JOHN FULLMER, SEAN MCINTYRE, SABRINA PROVO, on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>A-1 COLLECTION AGENCY, LLC, AND MOAB VALLEY HEALTHCARE, INC.,<br><br>Defendants. | **JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Case No. 4:20-cv-00143-DN<br><br>District Court Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Sean McIntyre and Sabrina Provo ("Plaintiffs") move the court for final approval of a class action settlement in their action against A-1 Collection Agency, LLC and Moab Valley Healthcare, Inc. ("Defendants").

**INTRODUCTION**

The Court previously granted preliminary approval of a Settlement Class between the Plaintiffs and the Defendants. (ECF 514) ("Preliminary Approval Order"). The only additional information for the court to consider is that no class member has objected to the settlement or

1

asked to opt out, indicating class support for the settlement. As shown below, the Court should grant final approval for the class because all of the requirements of Rule 23 have been met and the settlement is fair, adequate and reasonable.

The Court should also approve the proposed cy pres, the proposed incentive fee to the class representatives, and the request for attorneys fees.

## I.     The Requirements of Rule 23(a) Are Met.

In the prior motion for preliminary approval and class certification, and the Court's orders granting both motions, the four requirements to Rule 23(a) were addressed.[1] The prior motions and orders concluded that the more than 40 class members make joinder impractical and established numerosity. (ECF 128 at *5). The Court also found the class members shared the common questions "of law and fact regarding Defendants' liability", including "whether A-1 was acting as MVHI's agent" and "whether the public disclosure of private information satisfies the elements of a violation of the FDCPA, a violation of the UCSPA, invasion of privacy, or negligence". *Id* at *5. Furthermore, typicality was met "because the Representative Plaintiffs and the proposed Utah class's claims are premised on the same legal theory of Defendants' liability". *Id*. Finally, the Court found Plaintiffs McIntyre and Provo and their counsel adequate to represent the classes. *Id*.

None of the grounds on which the Court relied to find Rule 23(a) satisfied have changed since the Court preliminarily approved the settlement class. Rule 23(a) still justifies final approval of the class settlement.

---

[1] Plaintiffs incorporate by reference the motion for class certification and preliminary approval.

## II.     The Requirements of Rule 23(b)(3) Are Met.

Rule 23(b)(3) has two prerequisites for class certification: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Court has previously found both elements have been met. *Id* at 8.

To briefly summarize, the Court found questions of whether A-1 was an agent of MVHI and whether public disclosure of private information satisfies the elements of Plaintiffs' claims predominate over all other questions. The Court also found a class action is superior compared to dozens of individuals cases where class members may not know of their claims, the present forum is the most desirable for resolving all claims, and "judicial economy will be served through the management of a class action for purposes of determining Defendants' liability". *Id*.

Again, none of the grounds on which the Court relied to find Rule 23(b)(3) satisfied have changed since the Court preliminarily approved the settlement class. Rule 23(b)(3) is still met.

## III.    The Class Was Provided Notice.

Pursuant to the Preliminary Approval Order, Class Counsel sent out the notices approved by the Court to the class members. (ECF 155). The notices were sent by first class mail to the last known address available for all class members. Plaintiffs' efforts to provide notice to the class were done in good faith using the best practicable methods under the circumstances. *See Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *15 (D.N.M. Apr. 9, 2021) (granting final settlement approval and concluding that notice by mail constituted "the best notice practicable under the circumstances, and complied with the requirements of the Federal Rules of Civil Procedure and due process").

## IV. Class Members Were Provided An Opportunity To Opt Out And No Class Member Opted Out.

Rule 23 requires any notice to the class members include an opportunity to opt out under 23(c)(2)(B)(v). Notices to all class members were mailed out on August 29, 2025. (ECF 155). The notice informed the class members of their right to opt out and provided an exclusion deadline of October 13, 2025. No class members have elected to opt out. (ECF 163).

## V. There Have Been No Objections.

In addition to advising the class members they could opt out, the class members were also advised that they could assert objections to the proposed settlement. (ECF 155). Again, notices to all class members were mailed out on August 29, 2025. *Id*. The notice informed the class members of their right to object with an objection deadline of October 13, 2025. *Id*. No class member has objected to the settlement. (ECF 163).

## VI. The Settlement Remains Fair, Adequate and Reasonable.

The settlement meets the four-part test under Rule 23 set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).[2] The settlement was honestly negotiated, at arm's length, and with the use of a neutral mediator. The settlement was reached after extensive litigation including a contested summary judgment motion and class certification request. The settlement provides substantial relief to the class including payment of $900 and

---

[2] The four parts are:
    (1) whether the proposed settlement was fairly and honestly negotiated;
    (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
    (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
    (4) the judgment of the parties that the settlement is fair and reasonable.

three years of credit monitoring. The settlement gives the above substantial relief, including relief which may not have been available through this litigation.

Considering the settlement, any question over the ultimate outcome of the litigation is not as significant here. However, it is still worth mentioning the risks to the class moving forward without an amicable resolution. Several courts in Utah have dismissed FDCPA and UCSPA claims on various grounds including res judicata[3] and the petition clause[4]. A negative appellate opinion could torpedo the case. Moreover, it is likely that any result in favor of the class would be subject to an appeal in light of the above decisions and appeals. Due to the uncertainty involved, an immediate recovery outweighs the potential for a far more favorable outcome in the future.

Consequently, the settlement submitted is fair and reasonable. Moreover, no class member has voiced any objections to the settlement or has opted out of the settlement, further suggesting that the settlement is a just and adequate resolution.

### VII. The Parties Propose the Cy Pres (if any) should be given to Utah Legal Services.

"The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries."[5] If any of the settlement funds are not collected by the Class Members, the parties propose the cy pres be given to Utah Legal Services to bolster its debt collection defense services. Utah Legal Services assists

---

[3] *McMurray v. Forsythe Fin., LLC*, No. 1:20-CV-8 TS, 2021 WL 83265, at *2–3 (D. Utah Jan. 11, 2021).

[4] *Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, 2021 WL 3473050, at *1 (D. Utah Aug. 6, 2021).

[5] *Allred v. ReconTrust Co., N.A.*, 787 F. App'x 994, 995 (10th Cir. 2019)

the disadvantaged and those of limited means with legal representation in various matters including debt collection.[6] Access to counsel promotes greater accountability by collectors and encourages compliance with consumer protection statutes. Accordingly, Utah Legal Services is an appropriate recipient for the cy pres.[7]

### VIII. The Parties Propose an Incentive Award of $3,500 each for the Class Representatives.

"At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class". § 17:3. Rationale for incentive awards, 5 Newberg on Class Actions § 17:3 (5th ed.). These payments, sometimes referred to as incentive awards, work "[1] to compensate class representatives for work done on behalf of the class, [2] to make up for financial or reputational risk undertaken in bringing the action, [3] to recognize their willingness to act as a private attorney general, and [4] incentivize class members to step forward on behalf of the class". *Id*.

The Tenth Circuit has endorsed that class representatives should be compensated for the "time and effort invested in the case", including "monitoring class counsel… keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). This Court has previously recognized that financial risks for fees and costs are also a factor to be considered when evaluating a request for an incentive award. *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7

---

[6] See Utah Legal Services' website at: https://www.utahlegalservices.org/node/20/what-types-legal-problems-does-uls-help.

[7] See *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 59 (W.D.N.Y. 2018) (approving cy pres to New York Legal Services in FDCPA case); *Bonner v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 2:04 CV 440, 2005 WL 8170107, at *1 (N.D. Ind. Oct. 26, 2005) (same).

(D. Utah Apr. 29, 2021). Weighing these factors, courts in the Federal District for Utah have awarded incentive fees varying between $2,500 and $15,000 per class representative.[8]

Here Plaintiffs faced risk for fees and costs in bringing her claim. Both the FDCPA and the UCSPA potentially allow defendants to recover attorneys fees and costs.[9] At the time they brought this suit, multiple state and federal courts had already dismissed Utah consumer protection cases on various grounds. Counsel kept Plaintiffs up-to-date on these cases and the risks inherent in continued litigation and they elected to proceed with the case despite the potential for negative repercussions.

Additionally, Plaintiffs spent time monitoring the case and assisting when needed. Counsel had frequently phone calls with Plaintiffs regarding the status of litigation and negotiations. Plaintiffs also both appeared and testified at depositions. Plaintiffs guided major decisions in the two-year litigation and were intimately involved in settling the matter. Given the risks and her time and effort, the parties propose an incentive award of $3,500 each for Plaintiffs is reasonable.

---

[8] See *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021); *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *8 (D. Utah Sept. 30, 2015); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02 CV 950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014)

[9] See Utah Code § 13-11-19(5)(a) ('the court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if: the consumer complaining of the act or practice that violates this chapter has brought or maintained an action he knew to be groundless"); 15 U.S.C. § 1692l(a)(3) (On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs).

IX.     **Attorneys Fees**

Plaintiffs also ask that the Court approve Attorneys Fees of $75,000 pursuant to the Settlement Agreement. When facing a request for attorneys' fees after a class action settlement has been reached, the "ultimate standard" is whether the amount requested is "reasonable."[10] Courts in the Tenth Circuit apply one of two methods in assessing whether the requested fee award is reasonable: the "lodestar approach," and the "percentage-of-the-fund method, which awards class counsel a share for the benefit achieved for the class."[11]

In cases containing fee-shifting statutes, courts often begin with the lodestar approach. See *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010) (affirming use of lodestar method in FDCPA class action); see also *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-43 (9th Cir. 2011); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011);

The basic factor used by the courts in fixing the amount of attorney's fees is the so-called "time/rate" factor which includes: (a) the number of hours spent on the case and the manner in which they were spent;[3] (b) the reasonable hourly rate for each attorney.[4] § 12:444. Time and rate computation of attorney's fees in class action; lodestar factors, 6A Fed. Proc., L. Ed. § 12:444. Counsel Dan Baczynski's hourly rate is $425 and has spent more than three hundred hours on this case. (Exhibit A, Dan Baczynski Declaration). The lodestar amount far exceeds the $75,000 in attorneys fees requested.

The *Johnson* factors further support the reasonableness of the award. Though not required, the Court can consider these factors to weigh whether the lodestar method results in

---

[10] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1189 (10th Cir. 2017).
[11] *Id.* at 1185–86.

8

reasonable attorneys fees. See *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1104 (10th Cir. 2010) (finding "the lodestar determination is primary" and that it "is not automatically called into doubt merely because the trial court did not expressly discuss the *Johnson* factors"). These factors include:

(1) the time and labor involved;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability of the case";

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) And while these factors are all helpful, "rarely are all of the *Johnson* factors applicable".[12]

1. <u>Time and Labor Involved</u>

Plaintiffs' counsel spent significant time and labor converting highly contested claims into a common fund settlement. In total, and conservatively, Plaintiffs' Counsel spent over 300

---

[12] *Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

hours on the case. Utah courts have found hourly rates of $320 to $450 reasonable in FDCPA cases.[13] Dan Bazynski's rate of $425 fits within this range. At $425, the raw attorney's fees for the case would total at least $127,500. An award of $75,00 as requested would amount to less than the lodestar amount, which easily fits within the range for common fund cases. See *In re Qwest Commc'ns Int'l, Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) ("[C]ounsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.").

2. The Novelty and Difficulty of the Questions:

The case involved highly contested defenses including whether disclosure of private information violates the FDCPA or UCSPA; what allegations are sufficient to establish knowledge or intent under the UCSPA; and whether damages are available as class-wide relief for a UCSPA class in an action pending before the federal court. The claims are both complex and novel.

3. The Skill Requisite to Perform the Legal Services Properly:

Given the novelty and complexity of the issues, this was a case that required more skill than a "garden variety" case. And "class actions tend to involve a specialized area of the law which is often complex and difficult, and where some degree of extra skill is needed to litigate the cases properly".[14] Specifically, Plaintiffs' counsel is required to have significant experience with both consumer protection claims and class actions – a prerequisite for certifying the class –

---

[13] *Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*, No. 2:19-CV-00120-BSJ, 2021 WL 872494, at *6 (D. Utah Mar. 9, 2021).

[14] *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *9 (D. Utah Apr. 29, 2021).

10

in order to serve as class counsel. Fed R. Civ. P. 23(a) (requiring *"the representative parties will fairly and adequately protect the interests of the class" before proceeding as a class action).*

4. The Preclusion of other Employment by the Attorney due to Acceptance of the Case;

It is always difficult to pin down how agreeing to accept one case may later affect the ability to accept other cases but a case that extends two years naturally limits what a reasonable attorney can take on. It is not a significant factor in determining an appropriate fee in this case.

5. The Customary Fee;

The FDCPA and UCSPA both allow for the recovery of reasonable attorneys fees against the backdrop of rather limited statutory damages. 15 USC 1692l; Utah Code § 13-11-19(5). Awarding reasonable attorneys fees under the lodestar method, even when it exceeds the amount recovered for the consumer, comports with the customary fee in these types of cases.

6. Any Prearranged Fee:

This was purely a contingency fee arrangement for 40% of the recovery. There were no guarantees of success. As noted above, courts in both federal and state court have reached different conclusions on the legal issues at the heart of the case. The fact that the case was taken on a contingency basis is often considered an important factor in any analysis of an award to counsel. See e.g. *Blanco v. Xtreme Drilling and Coil Services, Inc.*, 2020 WL 4041456, at *6 (D.Colo., 2020) ("Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award")

7. Time limitations Imposed by the Client or the Circumstances/ The Nature and Length of the Professional Relationship with the Client:

As previously mentioned, the case has been pending for five years. Class counsel represented Plaintiffs from the very start through the present. The duration of the case supports class counsel's requested fee.

9. <u>The Amount Involved and the Results Obtained;</u>

The settlement is very favorable for the class. The class will receive an award of $900 and three years of credit monitoring regardless of the attorneys fees awarded. Moreover, by pursuing the action, Defendants remedied the underlying disclosure of private information at their own expense – eliminating the need for the class members to hire counsel. This factor weighs in favor of the fee requested.

10. <u>The Experience, Reputation, and Ability of the Attorneys;</u>

Class counsel has significant experience with the Utah Consumer Sales Practices Act and the FDCPA, the present claims in particular, and have represented multiple classes as outlined in his declaration in support of preliminary approval of the class.

11. <u>Undesirability</u>

While representing debtors who legitimately owe a debt against their debt collectors may not by the "sexiest" of cases, there is also nothing inherently undesirable about the nature of the case. There are, however, few attorneys practicing in this field in Utah and even less willing to do it on a contingency basis. This factor, while not particularly heavy, weighs in favor of the fee request.

12. <u>Awards in Similar Cases</u>

Class counsel's fee request comfortably fits within fee arrangements in similar cases involving the FDCPA and UCSPA. See *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 219CV00174RJSCMR, 2022 WL 911357, at *5 (D. Utah Mar. 29, 2022) (awarding $147,878.75); *Cotte v. CVI SGP Acquisition Tr.*, No. 221CV00299JNPDAO, 2023 WL 5351988, at *3 (D. Utah Aug. 21, 2023) (awarding $55,435).

## X. CONCLUSION

For the above reasons, the Plaintiffs request that the Court enter an Order finally approving the class settlement, approving the cy pres, approving the incentive fee award, and approving attorneys fees.

DATED this November 20, 2025.

                                                        **BACZYNSKI LAW, PLLC**

                                                        /s/ Daniel Baczynski
                                                        Counsel for Class and Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this November 20, 2025, 2021, I hereby filed a true and accurate copy of Plaintiffs' **MOTION FOR FINAL APPROVAL OF A SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT** electronically through its ECF service, with service provided automatically to all counsel of record.

/s/ Daniel Baczynski